## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NICOLE DEMARETZ-RYAN<br><br>    Plaintiff,<br><br>v.<br><br>JPMORGAN CHASE & CO. and<br>JPMORGAN CHASE BANK, N.A.,<br><br>    Defendants. | Civil Action No.  23-CV-2451<br><br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiff Nicole Demaretz-Ryan, by and through the undersigned counsel, brings this action against Defendants JP Morgan Chase & Co. and JPMorgan Chase Bank, N.A. and alleges as follows:

### THE PARTIES

1.     Plaintiff Nicole Demaretz-Ryan is a citizen of New York who presently resides in Richmond Hill, New York.

2.     Defendant JPMorgan Chase & Co. is a Delaware corporation that has its principal place of business in New York, New York.

3.     Defendant JPMorgan Chase Bank, N.A. is a federally chartered national banking association headquartered in New York, New York, and is a wholly owned subsidiary of JP Morgan Chase & Co.

4.     Defendants JPMorgan Chase & Co. and JPMorgan Chase Bank, N.A. are collectively referred to as "Chase Bank" throughout this Complaint.

## JURISDICTION AND VENUE

5.     This Court has subject matter jurisdiction over this matter under 28 U.S.C. § 1331 because Ms. Demaretz-Ryan's claims arise under the Electronic Fund Transfer Act, 15 U.S.C. § 1693 *et seq.*

6.     This Court has personal jurisdiction over Chase Bank because it has its principal place of business in New York, New York. Additionally, this Court has personal jurisdiction over Chase Bank because it transacted business throughout New York, had substantial contacts within New York, and committed the wrongful acts that are the subject to this Complaint in New York.

7.     Venue is proper in this Court under 28 U.S.C. § 1391(b)(1) and (2) because the Defendants maintain their principal place of business in this judicial district, and a substantial part of the events or omissions giving rise to the claim occurred within this judicial district.

## FACTUAL ALLEGATIONS

8.     Ms. Demaretz-Ryan has a checking account and a savings account with Chase Bank.

9.      Ms. Demaretz-Ryan uses a debit card that is associated with her Chase Bank accounts. Ms. Demaretz-Ryan had possession and control of this card at all times relevant to this Complaint.

10.     On August 14, 2022, Ms. Demaretz-Ryan became aware that someone had made several unauthorized ATM withdrawals from her savings account from late May 2022 to mid-August 2022.

11.     Ms. Demaretz-Ryan promptly contacted Chase Bank to prevent any further ATM withdrawals from occurring and to initiate a fraud claim (No. 504777416130001), and Ms. Demaretz-Ryan further notified Chase Bank that these ATM withdrawals were unauthorized, which triggered its obligations under the Electronic Fund Transfer Act ("EFTA").

12.     Eight unauthorized ATM withdrawals were ultimately made from Ms. Demaretz-Ryan's savings account prior to her contacting Chase Bank, and the total amount of these withdrawals was $3,860.00.

13.     The first two withdrawals were made at an ATM that it located in a restaurant at 416 Beach 116th Steet, Queens, New York 11693, while the remaining six withdrawals were made at an ATM that is located at a branch of Chase Bank at 114-20 Jamaica Avenue, Richmond Hill, New York 11418.

14.     A summary of the eight unauthorized ATM withdrawals, including the dates and amounts of the withdrawals is as follows:

3

| Date | Amount |
|------|--------|
| May 31, 2022 | $202.50 + $2.50 ATM Fee |
| May 31, 2022 | $202.50 + $2.50 ATM Fee |
| July 15, 2022 | $700.00 |
| July 18, 2022 | $400.00 |
| July 22, 2022 | $450.00 |
| August 2, 2022 | $1,000.00 |
| August 8, 2022 | $700.00 |
| August 15, 2022 | $200.00 |

15.     Several of the withdrawals were made at dates and times where it would have been physically impossible for Ms. Demaretz-Ryan to have made the ATM withdrawals herself given that she was at work in Manhattan, New York, or traveling back from work on the subway.

16.     Ms. Demaretz-Ryan continued to follow up with Chase Bank by phone about the unauthorized ATM withdrawals after making the initial fraud claim. Ms. Demaretz also visited a physical branch of Chase Bank that is located 81-35 Lefferts Boulevard, Queens, New York 11415, to follow up on her fraud claim several times.

17.     On or around August 19, 2022, Ms. Demaretz-Ryan was assisted during one of these visits by Mr. Adil Khan, an Associate Banker with Chase Bank, and Ms. Demaretz-Ryan completed a form that was titled "Identity Theft Declaration of Claimant." Ms. Demaretz-Ryan provided Chase Bank various information via this form, including information regarding her bank accounts, the unauthorized ATM withdrawals, and her discovery of the fraud that had been perpetrated against her.

18.     Ms. Demaretz-Ryan signed this form, which acknowledged that "a false statement [therein] may be a violation of the law," and subsequently had the form notarized prior to its submission to Chase Bank. Ms. Demaretz-Ryan also checked boxes on the form that (1) "authorize[d] the release of [the] information [on the form] to law enforcement for the purpose of assisting them with the investigation and prosecution of the person(s) who committed this fraud," and (2) "declare[d] that [she had] been a victim of identity theft."

19.     Ms. Demaretz-Ryan also began the process of completing a police report regarding the fraud that had been perpetrated against her around the time that she began visiting the physical branch of Chase Bank to follow up on the fraud claim that she had made.

20.     The police report was completed on or around August 24, 2022, and a copy of the police report was provided to Chase Bank by Ms. Demaretz-Ryan shortly thereafter to assist it with its investigation into the unauthorized ATM withdrawals.

21.     Ms. Demaretz-Ryan received notice from Chase Bank that her fraud claim had been denied on August 24, 2022.

22.     Ms. Demaretz-Ryan responded by sending Chase Bank a request for consideration via fax the following day. This request for consideration again outlined information regarding her bank accounts, the unauthorized ATM withdrawals, her

discovery of the fraud that had been perpetrated against her, and her whereabouts at the time that these ATM withdrawals were made.

23.    Ms. Demaretz-Ryan heard nothing from Chase Bank for a couple of weeks after sending this fax.

24.    On or around September 7, 2022, Ms. Demaretz-Ryan received an envelope from Chase Bank, which contained two letters related to the fraud claim that she had filed with Chase Bank.

25.    The first letter was dated August 16, 2022, which was a mere two days after she initially made the fraud claim with Chase Bank and before she had completed the "Identity Theft Declaration" or the police report. This letter stated that Chase Bank had found "[t]hat the transaction(s) [were] processed according to the information [Ms. Demaretz-Ryan] provided or was authorized," and that "[n]o adjustment [would] be made to [her] account at that time."

26.    The second letter was dated August 29, 2022, which was mere days after Ms. Demaretz-Ryan completed a police report related to the unauthorized ATM withdrawals and sent her request for reconsideration to Chase Bank. This letter stated that Chase Bank had "researched the disputed transaction(s) carefully and denied [Ms. Demaretz-Ryan's] claim based on the results," and that her "[c]laim was denied based on information [it] had available . . . during [its] investigation." Specifically, the letter stated that her "claim was denied based upon a review of [her]

account activity," and that copies of the documents that it relied upon during its research were enclosed. Tellingly, no such documents were included with this letter.

27.    Ms. Demaretz-Ryan has yet to receive reimbursement for any of the eight unauthorized ATM withdrawals that were made from her savings account, and Chase Bank has wrongfully held Ms. Demaretz-Ryan liable for $3,860.00 in unauthorized electronic fund transfers in violation of EFTA and its contract with her.

28.    Ms. Demaretz-Ryan filed a demand for arbitration against Chase Bank with JAMS pursuant to an arbitration clause in her deposit account agreement on or around October 5, 2022.

29.    A representative of Chase Bank's Legal Department contacted JAMS regarding this arbitration on November 28, 2022, and indicated that Mr. Michael Watson would be handling this matter on behalf of Chase Bank.

30.    JAMS contacted Mr. Watson regarding the payment that was required of Chase Bank to initiate this arbitration for the first time on December 9, 2022.

31.    JAMS followed up with Mr. Watson regarding the payment that was required of Chase Bank to initiate this arbitration on December 22, 2022, January 6, 2022 and January 23, 2022. Neither Mr. Watson nor any other representative of Chase Bank responded to any of these communications.

32.     JAMS gave Mr. Watson a final notice that JAMS would be closing its file and refusing to administer the arbitration if Chase Bank did not make the necessary payment to initiate the arbitration by February 10, 2023.

33.     JAMS did not receive the necessary payment to initiate the arbitration by the deadline, so JAMS closed its file and refused to administer the matter on or around February 15, 2023.

34.     By failing to make payment of the necessary arbitration expenses to JAMS in a timely manner, Chase Bank waived its right to arbitrate this matter.

## FIRST CAUSE OF ACTION—VIOLATION OF THE ELECTONRIC FUNDS TRANSFER ACT

35.     Under EFTA, Regulation E, and Regulation E's Official Interpretations, Chase Bank bears the responsibility for unauthorized electronic fund transfers like the ones at issue here.

36.     EFTA broadly defines "electronic funds transfer[s]" as "any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, or computer or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account," which "includes, but is not limited to,

point-of-sale transfers, *automated teller machine transactions*, direct deposits or withdrawals of funds, and transfers initiated by telephone."[1]

37.     EFTA broadly defines "unauthorized electric fund transfer[s]" as "electronic fund transfer[s] from a consumer's account initiated by a person other than the consumer without actual authority to initiate such transfer and from which the consumer receives no benefit."[2]

38.     EFTA caps consumer liability for such unauthorized electronic fund transfers at $50.00,[3] and the transactions that are at issue here far exceed this amount.

39.     Importantly, "the burden of proof is upon the financial institution to show that the electronic fund transfer[s] [were] authorized or, if the electronic fund transfer[s] [were] unauthorized, then the burden of proof is upon the financial institution to establish that the conditions of liability . . . have been met."[4]

40.     The obligation to investigate such unauthorized electronic fund transfers is triggered under EFTA's error resolution procedures when the consumer provides minimal information to the financial institution regarding the error.[5].

---

[1] 15 U.S.C. § 1693a(7) (emphasis added).
[2] 15 U.S.C. § 1693a(12).
[3] 15 U.S.C. § 1693g(a)
[4] 15 U.S.C. 1693g(c).
[5] 15 U.S.C. § 1693f(a)

"Error" is defined extremely broadly under this provision and includes "unauthorized electronic fund transfer[s]," such as the ones at issue here.[6]

41.    Under the error resolution procedures, once the financial institution "receives oral or written notice in which the consumer (1) sets forth or otherwise enables the financial institution to identify the name and account number of the consumer; (2) indicates the consumer's belief that the documentation . . . contains an error and the amount of such error; and (3) sets forth the reasons for the consumer's belief . . . that an error has occurred, the financial institution shall investigate the alleged error, determine whether an error has occurred, and report or mail the results of such investigation and determination to the consumer within ten business days."[7]

42.    In the event that the investigation determines that an error has occurred, the financial institution "shall promptly . . . correct the error."[8] However, in the event that the investigation determines that an error has not occurred, the financial institution must provide the consumer an explanation and inform the consumer of certain rights.[9] Specifically, "[i]f the financial institution determines after its investigation . . . that an error did not occur, it shall deliver or mail to the consumer

---

[6] 15 U.S.C. § 1693f(f).
[7] 15 U.S.C. § 1693f(a); *see* 12 C.FR. § 205.11.
[8] 15 U.S.C. § 1693f(b).
[9] 15 U.S.C. § 1693f(d).

an explanation of its findings within 3 business days after the conclusion of its investigation, and upon request of the consumer promptly deliver or mail to the consumer reproductions of all documents which the financial institution relied on to conclude that such error did not occur."[10]

43.     In lieu of the above error resolution procedure, a financial institution may . . . within ten business days after receiving . . . notice provisionally recredit the consumer's account for the amount alleged to be in error . . . pending the conclusion of its investigation and its determination of whether an error occurred."[11]

44.     Importantly, if it is ultimately found that "(1) the financial institution did not provisionally recredit a consumer's account within the ten-day period specified in [15 U.S.C. § 1693g(c), and the financial institution (A) did not make a good faith investigation of the alleged error, or (B) did not have a reasonable basis for believing that the consumer's account was not in error; or (2) the financial institution knowingly and willfully concluded that the consumer's account was not in error when such conclusion could not have reasonably been drawn from the evidence available to the financial institution at the time of its investigation, then the consumer shall be entitled to treble damages."[12]

---

[10] *Id.*
[11] 15 U.S.C. § 1693f(c).
[12] 15 U.S.C. § 1693f(e).

45.     Chase Bank has acted unlawfully and in violation of EFTA and Regulation E by attempting to hold Ms. Demaretz-Ryan for $3,860.00 in unauthorized electronic fund transfers that were completed by an unknown third party.

46.     Importantly, the unknown third party had no actual authority to initiate the electronic fund transfers from Ms. Demaretz-Ryan's Chase Bank accounts, and Ms. Demaretz-Ryan did not authorize anyone to use these accounts or any card associated with these accounts during the period in which the unauthorized electronic fund transfers were made. Additionally, Ms. Demaretz-Ryan received no benefit from the electronic fund transfers at issue, and this is evidenced by the fact that she now faces financial insecurity as a result of the theft of $3,860.00.

47.     Chase Bank cannot meet the burden of showing that the electronic fund transfers were authorized by Ms. Demaretz-Ryan or that the conditions of liability have been met insofar as she had possession of the card associated with her Chase Bank accounts during the entire timeframe in which the transfers had been completed, did not authorize anyone else to use her card or her Chase Bank accounts, and was physically unable to have made several of the electronic fund transfers given that she was nowhere near the locations at which such transfers were made.

48.     Ms. Demaretz-Ryan repeatedly asserted the above to Chase Bank and provided it additional information when her fraud claim was initially denied, but

Chase Bank ignored all this information by denying Ms. Demaretz-Ryan's fraud claim.

49.    Chase Bank also ignored numerous factors that suggested that the electronic fund transfers were not authorized. Specifically, Ms. Demaretz-Ryan immediately reported these transfers to Chase Bank, and this usage of her savings account was inconsistent with her historical use of the account.

50.    Chase Bank denied justified its denial of Ms. Demaretz-Ryan's fraud claim "based upon a review of [her] account activity." This justification defies logic insofar as a cursory review of Ms. Demaretz-Ryan's savings account activity shows that she rarely made any withdrawals from her savings account.

51.    Chase Bank failed to look at other evidence within its possession as part of its determination as to whether these electronic fund transfers were authorized. Specifically, Chase Bank made its determination that these electronic fund transfers were authorized prior to receiving and reviewing the "Identity Theft Declaration" and police report and failed to make a new determination as to the fraud claim once it received these documents. Chase Bank also failed to look at relevant surveillance footage that it could have easily pulled that would have definitely established whether Ms. Demaretz-Ryan was the person who had made the ATM withdrawals. The majority of the unauthorized ATM withdrawals were made at a physical branch of Chase Bank, and this surveillance footage was within its possession and control

at all times. Chase Bank could have easily consulted this surveillance footage, but chose not to attempt to access such information because it would have shown that Ms. Demaretz-Ryan was not the individual who made these ATM withdrawals.

52.     As such, Chase Bank acted in violation of EFTA and Regulation E by failing to correct the error by crediting Ms. Demaretz-Ryan's account with the amount of the unauthorized electronic fund transfers.

53.     Chase Bank has acted unlawfully and in violation of EFTA and Regulation E by failing to provide Ms. Demaretz-Ryan a written explanation of the finds of its investigation into whether an error occurred as required.

54.     Chase Bank completed its investigation into the unauthorized electronic fund transfers no later than August 16, 2022, which is the date of the first letter from Chase Bank that Ms. Demaretz-Ryan eventually received. Chase Bank had three days to provide a written explanation of its findings to Ms. Demaretz-Ryan after completing its investigation. No such explanation was provided by Chase Bank in the first letter. Such an explanation was provided in the second letter, which was dated August 29, 2022. However, this second letter was not received by Ms. Demaretz-Ryan until September 7, 2022, which is well outside of the permissible window.

55.    As such, Chase Bank acted in violation of 15 U.S.C. § 1692g and Regulation E by failing to provide Ms. Demaretz-Ryan a written explanation of the findings of its investigation into whether an error occurred as required.

56.    Chase Bank has acted unlawfully and in violation of EFTA by failing to provide Ms. Demaretz-Ryan "copies of the document that the institution relied on in making its determination" as required by 12 C.F.R. § 205.11(d)(1).

57.    Ms. Demaretz-Ryan requested that Chase Bank provide her copies of the documents that it relied on in making its determination after it initially notified her that it was rejecting her claim, and Chase Bank ultimately failed to provide her any of the documents that it relied on during its investigation. Rather, Chase Bank merely provided Ms. Demaretz-Ryan a written explanation of the purported reason for the denial of her claim for reimbursement of the unauthorized electronic fund transfers.

58.    As such, Chase Bank acted in violation of EFTA and Regulation E by failing to provide Ms. Demaretz-Ryan the documents that it relied on in making its determination of findings.

59.    Chase Bank has acted unlawfully and in violation of Regulation E by failing to conduct a bona fide reasonable investigation into the unauthorized electronic funds transfers as required.

60.     As part of any bona fide reasonable investigation, Chase Bank would have extensively reviewed the factors identified above, as well as the "Identity Theft Declaration" and the police report. Chase Bank would also have reviewed the surveillance footage from its ATM that would have shown the withdrawals in question, as well as the retailer that housed the ATM at which the initial two withdrawals were made. Such actions would have allowed Chase Bank to easily verify whether Ms. Demaretz-Ryan was the individual who made the electronic fund transfers.

61.     In light of the above, a reasonable investigation would have determined that Ms. Demaretz-Ryan did not authorize any of the disputed electronic fund transfers, promptly reported the transfers by phone, and had no history of irresponsibly using her account or making false or unverifiable reports of fraud. That the investigation did not reach the conclusion that the electronic fund transfers were unauthorized shows that it was not a bona fide reasonable investigation.

62.     As such, Chase Bank acted in violation of EFTA and Regulation E by failing to conduct a bona fide reasonable investigation into the unauthorized electronic fund transfers.

63.     The acts and omissions of Chase Bank that are set forth above constitute violations of EFTA and Regulation E.

16

64.     As a direct and proximate result of the unlawful conduct of Chase Bank, Ms. Demaretz-Ryan is entitled to the actual damages that she incurred, including, but not limited to, past and future monetary loss, emotional distress, and mental anguish. Specifically, Ms. Demaretz-Ryan seeks actual damages of $3,860.00 for the amounts that she was unlawfully held liable for in violation of EFTA and Regulation E. Ms. Demaretz-Ryan also seeks emotional distress damages in an amount to be proven at trial.

65.     As a direct and proximate result of the unlawful conduct of Chase Bank, Ms. Demaretz-Ryan is entitled to an award of statutory damages, as well as attorneys' fees and costs. Specifically, Ms. Demaretz-Ryan seeks statutory damages in the amount of $1,000.00.

66.     Finally, as a direct and proximate cause of the unlawful conduct of Chase Bank, Ms. Demaretz-Ryan is entitled to an award of treble damages. Chase Bank failed to provisionally recredit Ms. Demaretz-Ryan's account, did not make a bona fide good faith investigation of the unauthorized electronic fund transfers, and did not have a good faith basis for believing that her account was not in error. Additionally, Chase Bank knowingly and willfully concluded that Ms. Demaretz-Ryan's account was not in error despite the fact that such a conclusion could not reasonably have been drawn from the evidence available to it at the time of the investigation into the unauthorized electronic fund transfers.

## PRAYER FOR RELIEF

Ms. Demaretz-Ryan seeks the following relief from this Court:

A.      Actual damages in an amount to be proven at trial;

B.      Trebling of actual damages under EFTA;

C.      Statutory damages of $1,000.00 under EFTA;

D.      Her reasonable attorneys' fees under EFTA;

E.      Her costs and expenses associated with this matter; and

F.      Such other relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Ms. Demaretz-Ryan hereby demands a trial by jury on all issues so triable pursuant to Federal Rule of Civil Procedure 38(b).

Dated:   New York, New York
         23 March 2023

                              Yours, etc.

                              _____
                              Dayton P. Haigney, Esq.
                              **Law Office of Dayton P. Haigney**
                              **Local counsel to Plaintiff**
                              The Woolworth Building
                              233 Broadway, Suite 2348
                              New York, NY 10279
                              (212) 557-5590
                              DPHLAW@msn.com

                              Jarrett J. Faber, Esq.
                              **KNEUPPER & COVEY, P.C.**
                              **Lead Counsel to Plaintiff**
                              (*pro hac vice* application forthcoming)
                              GA Bar No. 703608
                              4475 Peachtree Lakes Dr.
                              Berkeley Lake, GA 30096
                              (404) 999-3239
                              jarrett@kneuppercovey.com